USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: 
DATE FILED: 10-31-14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

FRANKIE CANCEL,

Plaintiff,

-against-

NEW YORK CITY HUMAN RESOURCES ADMINISTRATION/DEPARTMENT OF SOCIAL SERVICES, PAUL LIGRESTI, ROBERT DOAR, ELENA HOLMES, MILDRED LUCIANO, JOHN/JANE DOE(S), CITY OF NEW YORK, and MICHAEL BLOOMBERG,

Defendants.

-----------------------------------------------------------x

11-cv-9725 (PKC)

MEMORANDUM AND ORDER

CASTEL, U.S.D.J.

Plaintiff Frankie Cancel, proceeding pro se, brings this action against the New York City Human Resources Administration/Department of Social Services (the "HRA"), several of its employees, the City of New York, and former Mayor Michael Bloomberg. He alleges that the HRA rescinded an offer of employment as a Paralegal Aide based on his criminal record, in violation of New York State and City law, and depriving him of a constitutionally protected property interest in violation of procedural due process. The parties now cross-move for summary judgment.

As will be explained, Cancel cannot establish that he had a constitutionally protected right in the Paralegal Aide position. Though he claims he was orally promised a permanent position, New York law requires a civil service employee to serve a probationary period, and does not empower employees to vary or modify that requirement. Cancel could only have been lawfully offered a probationary position to which, under established precedent, there

can be no constitutionally protected right. Thus, summary judgment is granted to the defendants on Cancel's procedural due process claim, and the Court declines to exercise supplemental jurisdiction over his remaining city and state law claims.

BACKGROUND

In 1992, at the age of nineteen, Cancel was convicted of first-degree manslaughter and sentenced to four to twelve years' imprisonment, and in 1997, while incarcerated, he was convicted of second-degree assault on a fellow inmate. (Jorgensen Decl. Ex. F.; Jorgensen Decl. Ex. B 41:8–42:5 ("Cancel Dep.").) While in prison, Cancel took a number of counseling and educational courses, becoming involved with the Alternatives to Violence Project and completing a paralegal training program. (Pl.'s 56.1 ¶¶ 3–7, 16; Pl.'s Exs. 25, 28.) He was released in September 2002, (Cancel Dep. 42:6–8), and has been gainfully employed since June 2003. (Pl.'s 56.1 ¶¶ 24–26; Jorgensen Decl. Ex. D.) He obtained an associate's degree in paralegal studies from Fiorello H. LaGuardia Community College of the City University of New York in 2005, and a bachelor's degree in legal studies from St. John's University in 2007. (Pl.'s 56.1 ¶¶ 17–19; Pl.'s Ex. 25.)

On February 23, 2008, Cancel, along with several hundred other applicants, took a civil service examination for the position of Paralegal Aide. (Pl.'s 56.1 ¶ 29.) He scored 95%, and was ranked 41 on the resulting civil service list. (Id.) On January 5, 2009, HRA sent him a letter informing him that his name had been certified for possible appointment, and instructing him to appear for a pre-selection hiring pool interview on January 15. (Defs.' 56.1 ¶ 6; Pl.'s 56.1 ¶¶ 30–31.) In the pre-interview paperwork accompanying the letter, Cancel disclosed that "[i]n

1992 and 1997, during [his] late teens, [he] was convicted of a felony," with the words "and 1997" appearing as an above-the-line insertion. (Jorgensen Decl. Ex. D.)

Cancel and the defendants' accounts of the January 15, 2009 interview differ. Cancel maintains that his interviewers appointed him to a Paralegal Aide position in the Child Support Litigation and Program Counselling Unit ("CSLPCU"), with no probationary period and subject only to the completion of "ministerial tasks." (Pl.'s 56.1 ¶¶ 46–47.) He also claims that he signed a form accepting the employment offer. (Cancel Dep. 81:5–12.) The defendants, on the other hand, assert that he was merely "selected subject to further review" for the position. (Defs.' 56.1 ¶ 11.) Cancel was instructed to report back on January 22 for processing of his application paperwork. (Defs.' 56.1 ¶ 11; Pl.'s 56.1 ¶ 52.)

In that paperwork, Cancel disclosed his criminal history in greater detail. (Jorgensen Decl. Ex. E at 0031.) He also signed an affirmation stating that "[f]ailure to meet the standards for [a] background investigation could result in disqualification," (id. at 0033), and a "Notice to Applicant" cautioning him that "completing this application process is not an offer of employment" (emphasis in original), and that no offer of employment with the HRA can legally be made without written approval from "other oversight agencies." (Id. at 0036.) On January 22, Cancel also signed a "Deferral Notice" informing him that his appointment was contingent upon his presenting certificates of disposition for his convictions by January 26. (Jorgensen Decl. Ex. H.) Cancel submitted those certificates, although it appears he was a few days late. (Jorgensen Decl. Ex. F.)

On February 2, defendant Elena Holmes, an HRA employee, sent Cancel a letter tersely informing him that his application was "under review," and that he would "be notified once a final determination [was] made." (Jorgensen Decl. Ex. I.) In an internal email dated

February 4, the HRA Deputy General Counsel responsible for reviewing Cancel's materials recommended against hiring him, expressing concerns about Cancel's multiple convictions, which she took as evidence of "poor impulse control," and emphasizing that the CSLPCU works a "highly charged," "chaotic and volatile" courthouse environment.  (Jorgensen Decl. Ex. K.)  On or about February 6, Cancel telephoned HRA Processing Specialist and defendant Mildred Luciano, who told him that his application had been denied.  (Defs.' 56.1 ¶ 28.)  On February 10, Holmes sent Cancel a letter formally denying his appointment to the Paralegal Aide position. (Jorgensen Decl. Ex. M.)

New York law requires an employer, upon request, to provide a written statement setting forth its reasons for denying employment to "any person previously convicted of one or more criminal offenses."  N.Y. Correction Law § 754.  Cancel made such a request on February 10, (Jorgensen Decl. Ex. N), and on March 13, defendant Paul Ligresti, an Assistant General Counsel, sent him a longer letter, explaining that he had been determined to be "unsuited to the sensitive responsibilities" of the position for which he was interviewing.  (Jorgensen Decl. Ex. O.)  The letter noted that Cancel's criminal record was "a factor in the overall determination." (Id.)

On July 22, 2009, Cancel commenced a proceeding pursuant to Article 78 of the New York Civil Practice Law and Rules, challenging HRA's denial of his appointment as discriminatory.  On October 23, the proceeding was dismissed due to Cancel's failure to comply with the four-month statute of limitations period.  (Jorgensen Decl. Ex. P.)  Cancel then filed this action on December 30, 2011, and filed an amended complaint on April 13, 2012.  (Dkt. Nos. 2, 17.)  He asserted claims under 42 U.S.C. §§ 1981 and 1983, as well as under a number of state-law provisions.

On August 1, 2012, this Court dismissed Cancel's federal law claims. 2012 WL 4761491. As is relevant here, it held that Cancel had failed to establish a protectable property interest in the Paralegal Aide position that would support a procedural due process claim, because his appointment to the position never became effective. Id. at *4–*6. This Court then declined to exercise supplemental jurisdiction over Cancel's state-law claims. Id. at *10. On appeal, the Second Circuit reinstated the procedural due process claim, stating that "a written or verbal communication guaranteeing government employment may, in some circumstances, give rise to [a constitutionally protected] property interest," and holding that Cancel's complaint "allege[d] a legitimate claim of entitlement to the Paralegal Aide position, subject only to the completion of ministerial tasks prior to his start date." 527 Fed. App'x 42, 44–45 (2d Cir. 2013). Because the federal claim had been reinstated, it also reversed this Court's decision to decline to exercise supplemental jurisdiction over Cancel's state-law claims. Id. at 45. Cancel moved for summary judgment on all remaining claims on June 2, 2014, and the defendants cross-moved for summary judgment on July 21, 2014.

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he is entitled to relief. The evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter

of law. Vt. Teddy Bear Co. v. 1–800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008).

In considering a summary judgment motion, "only admissible evidence need be considered by the trial court." Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 264 (2d Cir. 2009); see also LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005) ("[O]n summary judgment, a district court has wide discretion in determining which evidence is admissible." (quotation marks omitted)). The standard governing admissibility of evidence is the same on a motion for summary judgment as it is at trial. Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997).

## DISCUSSION

### I. Cancel's Preliminary Objections

At the outset, Cancel challenges the declaration of the defendants' attorney, Jeremy Jorgensen, to which the defendants' documentary evidence is attached as exhibits. (Dkt. No. 68.) He grounds his objection on the rule that requires that a "declaration used to support or oppose a [summary judgment] motion must be made on personal knowledge." Rule 56(c)(4), Fed. R. Civ. P. That requirement, however, applies slightly differently to declarations of attorneys, which are frequently allowed to function as "vehicle[s] to introduce evidence produced in discovery into the record in a cohesive manner." Genon Mid-Atl., LLC v. Stone & Webster, Inc., No. 11-cv-1299(HB), 2012 WL 1372150, at *2 (S.D.N.Y. Apr. 18, 2012). Such declarations "often do not rest entirely on personal knowledge," but will be stricken only when

they "are rife with argument, seek to introduce inadmissible evidence, or contain unsubstantiated factual averments." Degelman Inds. Ltd. v. Pro-Tech Welding & Fabrication, Inc., No. 06-cv-6346T, 2011 WL 6752565, at *3 (W.D.N.Y. Dec. 23, 2011).

Here, the defendants have used Jorgensen's declaration merely as a vehicle for their documentary evidence. The declaration does nothing more than describe the exhibits attached to it. Notably, Cancel does not appear to attack the admissibility of the exhibits themselves—a wise decision, given that he has included and relied upon nearly all of those documents in his own submissions. Accordingly, the Court will consider the Jorgensen declaration and its exhibits in deciding these motions.

Cancel also claims that the defendants' Rule 56.1 statement in opposition to his statement of undisputed material facts is "not sufficient," because in many of their responses the defendants claim to "deny knowledge or information sufficient to form a belief" as to the fact at issue. It is true that such a response is insufficient to controvert a fact claimed by the movant to be undisputed. Whitehurst v. 230 Fifth, Inc., 998 F. Supp. 2d 233, 248 (S.D.N.Y. 2014); Ezagui v. City of N.Y., 726 F. Supp. 2d 275, 285 n.8 (S.D.N.Y. 2013). The Court will thus regard as admitted the facts to which the defendants responded in this manner. Those facts, however, relate mostly to Cancel's efforts to rehabilitate himself during and after his incarceration, and to immaterial details of Cancel's January 15 interview. (Defs.' 56.1 in Opp'n ¶¶ 3–26, 33–40.) As the rest of this opinion makes clear, they are not material to the Court's disposition of these motions.

II. Procedural Due Process Claim

Cancel's procedural due process claim turns on his ability to demonstrate that he obtained a constitutionally-protected property interest in the Paralegal Aide position. See McMenemy v. City of Rochester, 241 F.3d 279, 285–86 (2d Cir. 2001) (stating that a plaintiff must show that he "possessed a protected liberty or property interest, and that he was deprived of that interest without due process" (quotation marks omitted)). State law guides a court in determining whether a plaintiff has such a cognizable interest, or instead "only an unprotected unilateral expectation of employment." Donato v. Plainview–Old Bethpage Cent. School Dist., 96 F.3d 623, 629 (2d Cir. 1996). Under New York law, "a person successfully passing a competitive Civil Service examination does not acquire any 'legally protectable interest' in an appointment to the position for which the examination was given." Andriola v. Ortiz, 82 N.Y.2d 320, 324 (1993) (emphasis in original). See also Abramson v. Pataki, 278 F.3d 93, 99 (2d Cir. 2002) ("Ordinarily, there is no constitutionally protected property interest in prospective government employment."). Further, "a probationary employee, unlike a permanent employee, has no property rights in his position." Finley v. Giacobbe, 79 F.3d 1285, 1297 (2d Cir. 1996) (quoting Meyers v. City of N.Y., 208 A.D.2d 258, 262 (2d Dep't 1995)).

Cancel, however, asserts not only that he was actually appointed to the Paralegal Aide position at his January 15 interview, but that his interviewers told him he would not have to complete a probationary period. The record contains no evidence, beyond Cancel's own testimony, corroborating this account.[1] But even assuming that it is accurate, the interviewers, if

[1] Cancel also points the Court to three documents that he claims constitute "written communications" of his permanent appointment, but none of them in fact do so. The first is the "Deferral Notice," mentioned earlier, which states that Cancel's appointment is effective on February 9, 2009, and that no action will be taken on his appointment until he presents missing documentation. (Pl.'s Ex. 9; Jorgensen Decl. Ex. H.)

they were authorized to appoint him to a position at all, were prohibited by statute from appointing him to a non-probationary position. And because New York law does not consider governmental agencies to be bound by the unauthorized acts of its employees, the interviewers' statements were insufficient under New York law to confer upon Cancel a property interest in the Paralegal Aide position.

First, the post-interview paperwork is at odds with any assertion that candidates for employment with the HRA may be appointed outright at their pre-selection hiring pool interview. (Indeed, Cancel emphasizes that his post-interview criminal background review was pursuant to established state procedure. (Pl.'s Mem. 5–8.)) As part of that paperwork, Cancel signed an affirmation stating: "I acknowledge that my appointment or promotion depends upon my full cooperation in investigation and my meeting all applicable qualifications . . . . Failure to meet the standards for the background investigation may result in disqualification." (Jorgensen Decl. Ex. E. at 0033.) The "Notice to Applicant" signed by Cancel states that "no offer of employment can legally be made without [the] written approval" of "other oversight agencies." (Jorgensen Decl. Ex. E at 0036.) Cancel has provided no explanation for how or why an exception could have been made in his case. The existence of a post-interview background check procedure supports the conclusion that it was a required process. Given that the HRA evidently reserved the right to disqualify applicants after their screening interview, New York

---

The second is a "New Hire History Sheet" filled out by defendant Luciano, which does state that Cancel was appointed to the Paralegal Aide position. (Pl.'s Ex. 7.) But it also notes that Cancel's application is "under review," and finally that Cancel was "not selected." Luciano has testified that she filled out the first part of the form in advance in order to save time. (Jorgensen Decl. Ex. G 13:1–5 ("Luciano Dep.").) Moreover, there is no indication that Cancel was ever given this form during the application process, and the space for the "Candidate's Signature" is blank.

The third is a "Notice of Action," on which, in the section "ACTION TAKEN AT POOL," the box for "Appt." is checked. (Pl.'s Ex. 15.) That section of the form, however, apparently serves to identify the type of personnel action that is at issue (other possibilities include promotion or leave of absence without pay), rather than to indicate that the action was in fact completed. Notably, the box for "Appointment Completed" remains unchecked.

law would not recognize oral statements at the interview by a government employee as creating a property right. See Fowler v. N.Y. State Bd. of Law Examiners, 298 A.D.2d 682, 683 (3d Dep't 2002) (holding that a petitioner who was told that she was eligible to take the New York bar exam, and took it, but was later disqualified when the Board of Law Examiners discovered that she did not meet educational requirements, could not assert estoppel against the Board, because the Board "is authorized to determine eligibility" for the bar).

Moreover, New York law would not permit an offer to Cancel that exempted him from probationary status. The Civil Service Law provides that "[e]very original appointment to a position in the competitive class . . . shall be for a probationary term," and empowers municipal civil service commissions to "provide by rule for the conditions and extent of probationary service." N.Y. Civ. Serv. Law § 63. In turn, the Personnel Rules and Regulations of the City of New York ("PRR") provide that "[e]very appointment and promotion to a position in the competitive or labor class shall be for a probationary period of one year." Rule 5.2.1(a), PRR.[2]

Cancel claims that, pursuant to Rule 5.2.2 of the PRR, his interviewers gave him "credit" for an internship in a private law office that he obtained through LaGuardia Community College, allowing them to waive the probation requirement. Rule 5.2.2, however, provides that probation is waived only

> if a permanent employee has served in a promotional title and particular job assignment on a provisional or temporary basis for a continuous period equal to or greater than the probationary period for that title immediately prior to a permanent promotion to such title or, as determined by the commissioner of citywide administrative services, in a title in a similar grade and in such particular job assignment or similar job assignment in the same agency. . . .

Rule 5.2.2, PRR (emphasis added). It only applies if the newly promoted employee was previously serving in the same position on a temporary basis, or in a similar position in the same

[2] The PRR are available online at http://www.nyc.gov/html/dcas/html/employees/personnelrules_regs.shtml.

agency, and if that previous service was immediately prior to the promotion.  Neither of these criteria apply to Cancel, whose internship was with a private law office and ended in 2007.  (Jorgensen Decl. Ex. D at 0008.)  Any purported appointment of Cancel to a permanent position would thus have been explicitly unauthorized.

"[G]overnmental agencies cannot be held accountable for the unauthorized acts of their agents."  Safway Steel Prods., Div. of Figge Int'l, Inc. v. Craft Architectural Metals Corp., 183 A.D.2d 452, 452 (1st Dep't 1992).  Furthermore, they are not bound by their employees' mistakes when these violate clear statutory commands.  See Schorr v. N.Y. City Dep't of Hous. Pres. & Dev., 10 N.Y.3d 776, 779 (2008) (holding that a city housing agency was not estopped from evicting a tenant who did not meet eligibility requirements by its purported acquiescence in his occupancy for several years); Grella v. Hevesi, 38 A.D.3d 113, 117–18 (3d Dep't 2007) (holding that the state comptroller was not estopped from suspending the petitioner's retirement benefits, when petitioner relied on a Retirement System employee's erroneous advice that he would still be eligible for benefits if he returned to public service); Patterson v. Goord, 299 A.D.2d 769, 770 (3d Dep't 2002) (holding that the Department of Correctional Services was not estopped from recalculating a prisoner's expiration and release dates by its communication of erroneous earlier dates to him).

Because the interviewers were not authorized to appoint Cancel to a permanent position, they could not, under New York law, confer upon him a property right in such a position.  At best, assuming they had the power to appoint him at all, they appointed him to a probationary position.  But as noted earlier, New York law does not recognize probationary

employees as having a property right in their position. And without a property right, Cancel's procedural due process claim must fail.[3]

III. Claims under New York State and City Law

A district court "may decline to exercise supplemental jurisdiction over" a state-law claim if, as here, "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Its discretion to exercise supplemental jurisdiction in such a situation, however, "is not boundless." Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003). "In deciding whether to exercise jurisdiction over supplemental state-law claims, district courts should balance the values of judicial economy, convenience, fairness, and comity—the 'Cohill factors.'" Klein & Co. Futures, Inc. v. Bd. of Trade, 464 F.3d 255, 262 (2d Cir. 2006) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims." Kolari v. New York–Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (quoting Cohill, 484 U.S. at 350 n.7 (ellipsis omitted)).

This is such a case. Moreover, this case does not implicate preemption issues and is not nearly ready for trial, unlike actions in which the Second Circuit deemed it proper for the district court to retain supplemental jurisdiction after federal claims were dismissed. See Valencia, 316 F.3d at 306 (collecting cases). Accordingly, the Court declines to exercise supplemental jurisdiction over Cancel's claims under New York State and City law.

[3] Cancel has asked the Court to disregard arguments, which he contends the defendants first raised in reply, concerning the individual defendants' involvement or not in the decision not to hire Cancel, and concerning the basis for municipal liability. (Dkt. No. 79.) Because the Court disposes of Cancel's procedural due process claim on other grounds, that request is moot.

CONCLUSION

Summary judgment is GRANTED to the defendants on Cancel's procedural due process claim. Cancel's remaining state-law claims are DISMISSED without prejudice.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       October 30, 2014